**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NILES LANG, et al., | : | CIVIL ACTION NO. 10-2564 (MLC) |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| v. | : | |
| TEWKSBURY TOWNSHIP, et al., | : | |
| Defendants. | : | |

**COOPER, District Judge**

This matter comes before the Court on the motions of the Plaintiffs/Third Party Defendants, Niles Lang and Sonja Keith ("Plaintiffs"), to (1) reopen the action, and (2) enforce a settlement agreement against Defendant/Third Party Plaintiff Richard S. Federowicz ("Defendant") and for an award of attorneys' fees.  (Dkt. entry no. 18, Mot. to Reopen; dkt. entry no. 19, Mot. to Enforce Settlement.)  Defendant opposes the motion to enforce the settlement agreement and for fees, and "requests that the Court restore this case to the active trial list and vacate the previously entered settlement agreement." (Dkt. entry no. 21, Def. Opp'n at 3.)  Defendant contends that he was not mentally competent to enter into the settlement agreement at issue.  (<u>Id.</u> at 6.)

The Court decides the motions on the papers without oral argument, pursuant to Local Civil Rule 78.1(b).  For the following reasons, the Court will grant (1) the motion to reopen

the action in order to consider the motion to enforce the settlement agreement, and (2) the part of the motion seeking to enforce the settlement agreement.  The Court will deny the part of the motion seeking an award of fees.

### BACKGROUND

Plaintiffs and Defendant, along with several other parties to the action including defendant Tewksbury Township, participated in a Court-ordered mediation session presided over by the Honorable John M. Boyle, J.S.C. (Ret.) on October 21, 2010.  (Dkt. entry no. 19, Pl. Br. at 1; Def. Opp'n at 3.)  The parties reached an oral agreement settling the action, which was taped and put on the record.  (Pl. Br. at 13; Def. Opp'n Br. at 3; dkt. entry no. 19, Kirmser Cert., Ex. C, Settlement Agreement Tr. at 4:17-10:23.)

The terms of the settlement agreement were memorialized in writing and distributed to all parties' counsel for execution.  (Pl. Br. at 1; Kirmser Cert., Ex. D, Stip. of Settlement.)  Plaintiffs assert that all parties and their respective counsel have signed the written Stipulation of Settlement, with the exception of Defendant and his attorney, Matthew Dorsi, Esq.  (Pl. Br. at 2.)  Plaintiffs contend that Defendant claimed for the first time in March 2011, four months after the settlement agreement was reached, that Defendant was "not in the right frame of mind" during the October 21, 2010 mediation session, when he

2

verbally agreed to the Settlement Agreement, and now "has proceeded to defy each and every obligation of the Settlement Agreement to which he willingly accepted at the mediation." (Id.)

Defendant acknowledges that the October 21, 2010 mediation resulted in an oral settlement agreement and that at the time the agreement was put on the record, he agreed that (1) "he had the benefit of the advice of" his attorney; (2) his attorney answered all of his questions; (3) he was satisfied with his attorney's services; (4) he was under no pressure to settle; (5) he understood the settlement's terms and conditions, and agreed to them; (6) he had the right not to settle and instead could have proceeded to trial; (7) he was not under the influence of any drugs or alcoholic beverages that would prevent him from fully understanding the terms and conditions of the settlement; and (8) he had no questions for Judge Boyle. (Pl. Br. at 3-4; Def. Opp'n at 2, Resp. to Pls.' Stmt. of Facts at ¶ 5.) Defendant attempted to renegotiate three terms of the settlement agreement on February 15, 2011. (Pl. Br. at 7; Def. Opp'n at 2, Resp. to Pls.' Stmt. of Facts at ¶ 10; Kirmser Cert., Ex. F (setting forth Defendant's "issues . . . with the agreement").) On March 10, 2011, Defendant's counsel sent a letter to Plaintiffs' counsel Robert Simon, and enclosed a letter from Defendant's treating social worker, Mark Amoroso. (Kirmser Cert., Ex. G, 3-10-11

Letter from Dorsi to Simon (enclosing the "Amoroso Letter").) Defendant's counsel characterized the Amoroso Letter as stating that Defendant "was not in the right frame of mind on October 21, 2010, when he verbally agreed to the settlement agreement on this case."  (Id.)  The 3-10-11 Letter states that the Amoroso Letter is "from February 2011."  (Id.)

   Defendant explains in his opposition to the motion to enforce the settlement agreement that he "suffers from a 40 year struggle with severe PTSD, Bipolar Disorder, anxiety disorder, and severe depression as a result of his service in the United States Army during the Vietnam War."  (Def. Opp'n, Counterstmt. Facts at ¶ 2.)  He receives treatment at a veterans' hospital for these conditions, and on October 20, 2010, had a regularly scheduled visit with his social worker, at which time he expressed concern and anxiety about the mediation session scheduled for the following day.  (Id. at ¶¶ 3, 13.)  He asserts that during the mediation session, he "began to suffer an acute attack of his PTSD and anxiety disorder and over medicated himself in an effort to control the symptoms."  (Id. at ¶ 5.)  The pressures of the day-long mediation session affected him, such that he became anxious, emotional, lightheaded, and "only able to comprehend small portions of what was being read."  (Id. at ¶¶ 8-10.)

4

Defendant asserts that when his turn came to assent to the terms of the settlement agreement, "he became very fearful that if he answered 'no' when everyone else agreed to the settlement, he would come under attack by others in the room. His throat began to close and he would be unable to speak and defend his objection to the settlement agreement." (Id. at ¶ 11.) In support of his assertion that due to his "acute attack of PTSD, Vietnam flashbacks and an anxiety attack, as well as his overdosing of his prescribed psychotropic medications, [Defendant] was not mentally competent to enter into any type of agreement on October 21, 2010," Defendant offers the undated letter from his treating licensed social worker, Mark Amoroso. (Dkt. entry no. 21, Dorsi Cert., Ex. A, Amoroso Letter.) The Amoroso Letter states, "[I]t's beyond certain that [Defendant's] condition during the meeting which occurred on October 21, 2010 did not allow him to make him an informed decision, rendering him incompetent." (Id. at 2.)

Plaintiffs attack the Amoroso Letter as inadmissible to support Defendant's contention that he was mentally incompetent to enter into the settlement agreement, raising two grounds. First, Plaintiffs contend that Amoroso "is not qualified to give testimony as to [Defendant's] mental state at the time [Defendant] voluntarily entered into" it because Amoroso "was not present during the settlement conference and was not able to

5

observe and diagnose [Defendant's] condition at that time." (Dkt. entry no. 22, Pl. Reply Br. at 1-3.)  Second, Plaintiffs argue that the Amoroso Letter constitutes an inadmissible net opinion, insofar as it is "conclusory and unsupported by the facts on the record."  (Id. at 4.)

## DISCUSSION

### I. Enforceability of Settlement Agreements

"[A]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties. . . ."  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).  In New Jersey, a settlement agreement between parties to a lawsuit is a binding legal contract.  Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (citations omitted).  As such, a federal court shall apply state law to the construction and enforcement of a settlement agreement.  Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348 (D.N.J. 1996).  As Defendant acknowledges, an oral settlement agreement need not be made in the presence of the court nor reduced to writing in order to have legal effect. United States v. Lightman, 988 F.Supp. 448, 459 (D.N.J. 1998); see also Pascarella v. Bruck, 462 A.2d 186, 189 (N.J. App. Div. 1983).  (See Def. Opp'n at 3 ("[Defendant] does not dispute that verbal settlement agreements can be enforced even if the parties do not reduce them to writing or later refuse to sign them.").)

New Jersey courts generally disallow vacating settlement agreements absent a showing of fraud, mutual mistake, or other compelling circumstances. Nolan, 120 N.J. at 472. Before vacating a settlement agreement, New Jersey courts require "'clear and convincing proof' that the agreement should be vacated." Id. (citing DeCaro v. DeCaro, 13 N.J. 36, 42 (1953)); see also Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) ("settlements will usually be honored 'absent compelling circumstances'"). However, "[i]f a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Brundage, 195 N.J. at 600. Competence to voluntarily consent to an agreement exists where a person has "'the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting.'" Jennings v. Reed, 885 A.2d 482, 488 (N.J. App. Div. 2005) (quoting Eaton v. Eaton, 37 N.J.L. 108, 113 (N.J. 1874)).

The strong public policy in favor of enforcing settlement agreements is "based upon the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Id. at 601; see also Grow Co. v. Chokshi, 403 N.J.Super. 443, 464 (N.J. App. Div. 2008) ("the settlement of

lawsuits, as a policy matter, ranks high"). In furtherance of this policy, courts "strain to give effect to the terms of a settlement wherever possible." Brundage, 195 N.J. at 601 (quotation and citation omitted).

**II. Admissibility of Amoroso Letter**

Plaintiffs argue that Amoroso "is not qualified" to diagnose Defendant's condition, such that his letter "is not expert testimony and is not a reliable assessment of [Defendant's] condition at the time of the settlement conference." (Pl. Reply Br. at 2.) In support of this argument, Plaintiffs point to a letter submitted as an exhibit to Defendant's opposition to the motion. (Id.; Dorsi Cert., Ex. B, 9-29-11 Letter.) The letter is from the Regional Counsel for the U.S. Department of Veterans Affairs ("VA") to Defendant's counsel, in response to Defendant's counsel's request that Amoroso proffer a certification in this matter, and advises that "[t]he VA New Jersey Health Care System is not a forensic facility, and Mr. Amaroso [sic] is not in a position to speak to [Defendant's] psychological or emotional state of mind." (9-29-11 Letter (citing 38 C.F.R. 14.808(a) as "specifically prohibit[ing] VA personnel from giving expert testimony or opinions concerning official VA information, subjects or activities").)

The rule prohibiting the admission of net opinions is not found in the Federal Rules of Civil Procedure, but is "a

8

longstanding rule that dictates exclusion of expert testimony that contains 'bare conclusions, unsupported by factual evidence.'" City of Millville v. Rock, 683 F.Supp.2d 319. 239 (D.N.J. 2010) (internal quotation and citation omitted).

The Amoroso Letter conclusorily states that because "veterans with PTSD do not react well in confining circumstances and in most cases become filled with anxiety[, i]t would have been impossible for this veteran to make any rational decisions in perceived hostil [sic] settings." (Amoroso Letter at 1.) It is undisputed that Amoroso was not at the settlement conference, and thus no independent factual basis for his statement that Defendant "became unaware of what was being said" exists. Further, this assertion is inconsistent with the indications in the record, including from Defendant himself, that no one noticed Defendant acting out of the ordinary in any way. (Id.; Pl. Reply Br. at 4-5.) To the extent Defendant suggests that the proofs are insufficient because his counsel was thwarted by U.S. Department of Veterans Affairs regulations from obtaining Defendant's medical records, the letter Defendant's counsel received in response to his request for records states that such records could be released as "needed to prevent the perpetration of a fraud or other injustice," pursuant to 38 C.F.R. 14.803(a), or "the relevant medical records may be released to you with the veteran's written authorization." (Dorsi Cert., Ex. B, 9-29-11

9

Letter.)  The purported inaccessibility of Defendant's medical records is therefore not a mitigating factor that would excuse the lack of proofs supporting the conclusion put forth in the Amoroso Letter.

The Court concludes that the Amoroso Letter is inadmissible net opinion, insofar as it asserts that Defendant was incompetent on October 21, 2010.

### III. Mental Competency of Defendant

The burden is on Defendant, as the party seeking to "vacate the previously entered settlement agreement," to show that he was not mentally competent at the time the contract was formed. (Def. Opp'n at 3.)  See Jennings, 885 A.2d at 488.  We find that he has not shown clear and convincing proof that he was in fact incompetent to consent to the settlement agreement on October 21, 2010.  This is in part because "[t]he social worker was not present at the time of the settlement conference and could not possibly be in a position to determine whether Plaintiff was not 'in the right state of mind' when he voluntarily agreed to the settlement," and is inadmissible net opinion for the reasons discussed supra.  (Pl. Reply Br. at 2.)  We now turn to the other evidence available to the Court with respect to Defendant's mental state during the settlement conference.

The situation presented here contains similarities to the facts in Jennings v. Reed, 885 A.2d 482 (N.J. App. Div. 2005).

10

Like this case, <u>Jennings</u> involved a dispute between neighboring property owners regarding the appearance and maintenance of property, and alleged harassment and intimidation with respect thereto.  885 A.2d at 484.  In <u>Jennings</u>, the plaintiff ("Jennings") appealed the trial judge's enforcement of a settlement agreement entered into on behalf of himself and his wife, following an hours-long settlement discussion in which Jennings participated with his counsel.  <u>Id.</u> at 485.  Jennings was advised not to consent to the agreement if he felt it had been achieved through duress.  <u>Id.</u>  Notably, Jennings was not present at the time the agreement was placed on the record, because he "had left the courthouse to call another attorney and visit his psychiatrist across the street."  <u>Id.</u>  Three weeks after the settlement conference, Jennings contacted the trial judge <u>ex parte</u> expressing displeasure with the settlement, and later opposed the defendants' motion to enforce the settlement agreement on the basis that he lacked mental capacity to consent to it.  <u>Id.</u>  In support of this position, Jennings submitted certifications from himself, his wife, his "personal" attorney, and his psychiatrist.  <u>Id.</u>  None of the latter three had been present at the settlement conference.  <u>Id.</u>

Jennings' psychiatrist, like Defendant's social worker here, certified that Jennings had not been "capable of making a rational decision that afternoon," due to his "the length of

11

these stressful situations and being forced to endure years of emotional stress . . . result[ing] in [his] injuries becoming more entrenched and chronic." Id. at 486. As here, the Jennings defendants "did not submit any medical testimony as to Jennings' mental condition"; however, the defendants' attorney

> filed a certification in which he stated that on the day of settlement, plaintiffs' counsel advised that . . . many of the changes demanded by Jennings during the conference were incorporated into the final agreement; that Jennings was advised by his counsel not to sign the agreement if under duress; and that Jennings informed his attorney, in the presence of defendants' counsel, that he was voluntarily signing the agreement.

Id. The trial judge accepted the Jennings's psychiatrist's certification, but found that it was insufficient to show that Jennings was incompetent at the time the agreement was reached; rather, it indicated "[a]nxiety or emotional distress, in connection with a lawsuit, [which] is something many of us feel." Id. at 487.

The Appellate Division affirmed, finding that Jennings's proofs did not establish that he was unable to appreciate the nature of the business he was transacting. The court found:

> At the very most, [Jennings' psychiatrist] opined that Jennings suffered anxiety and trauma due to a longstanding mental condition, but nothing in that diagnosis suggests that Jennings, as a result, was incapable to comprehend the nature and extent of his acts. And to the extent [the psychiatrist] surmised any further, that Jennings was incapable of making a rational decision, the expert's conclusion was an

12

>  impermissible net opinion, lacking a sufficient factual foundation.

Id. at 489-90.

We find that Defendant has failed to make the necessary showing to vacate the settlement agreement for reasons similar to those present in Jennings.  To the extent the Court considers the Amoroso Letter, it is not based on facts relating to Defendant's state of mind during the settlement conference, but is a conclusory and inadmissible net opinion.  Moreover, Defendant's self-serving assertions that he was unable to understand the terms as they were being read into the record and that he "overdosed" on his medication are not supported by the record, which indicates that Defendant (1) behaved appropriately, (2) cogently answered questions, and (3) had the assistance of counsel throughout the negotiations and finalization of the oral agreement.  (Settlement Tr. at 18:12-19:13; see also id. at 22:1-15 (statement of mediator praising "the reasonableness of the parties" and the fact that "the parties have carried themselves well . . . [and] conducted themselves as ladies and gentlemen"); Dorsi Cert. at ¶ 3 (certification of Defendant's counsel stating that he was "unaware that his client . . . was suffering from an acute attack of his previously diagnosed PTSD and anxiety disorder . . . [and] was taking additional psychotropic medications that were above and beyond the prescribed dosage while at the mediation session.").)

The <u>Jennings</u> court cited the trial judge's observation that stress and anxiety in connection with a lawsuit are common responses to litigation, and for public policy reasons should not constitute a basis for a party to renege on and vacate a settlement agreement, in affirming that decision.  885 A.2d at 487.  Here, Defendant's certification as well as the Amoroso Letter make clear that his high anxiety level was and has been connected to the case itself.  The treatment notes for October 20, 2010, state that although Defendant "continue[d] to be under great distress over the pending law-suite [sic] with him and his neighbor," the social worker noted that "mood and affect were appropriate, judgment and insight were good."  (Dorsi Cert., Ex. C, Progress Note.)  Finally, although Defendant asserts that had he been "in the right state of mind and not under severe emotional distress, [he] never would have agreed on the proposed settlement," his opposition papers do not explicitly state what his reservations or objections to the settlement agreement are or would have been at the time; to this end, Plaintiffs submitted the February 15, 2011 email from Defendant's counsel to Plaintiffs' counsel containing Plaintiff's "issues . . . with the agreement which might not be deal breakers for either side" and which, upon the Court's review, have little significance to the overall agreement but are rather semantic differences.

While the Court does not doubt that Defendant suffers from serious and debilitating mental conditions as a result of his military service, the record does not support a finding that he was unable to understand the terms of the settlement agreement to which he voluntarily agreed and stated as much on the record; rather, it is evident that Defendant experienced much stress and anxiety in connection with this lawsuit generally and that he may have agreed to the settlement agreement because he wanted the process to come to an end.  (Federowicz Cert. at ¶ 20; Progress Note for 10-30-10 ("Problems with neighbor has remarkable negative influence on Pt.'s mental condition"); Progress Note for 10-13-09 ("There is persistent stress related to problems with Pt.'s neighbor").)  See Cintron v. New Jersey, No. 10-195, 2011 WL 4549147, at *3-4 (D.N.J. Sept. 29, 2011) (rejecting plaintiff's attempt to vacate settlement agreement as being signed under duress, where she claimed to have felt intimidated, "overwhelmed by the whole mediation process," and she felt that everyone else wanted to leave as it was the end of the day, and observing that "[t]he fact that the plaintiff may have been nervous or even upset does not prove that she was unable to comprehend the nature and extent of her acts" (citing Jennings)).  The settlement agreement must be given effect.

**IV.   Attorneys' Fees**

Plaintiffs request an award of reasonable attorneys' fees associated with the filing of the motion to enforce settlement. (Pl. Br. at 13.)

"It is well settled that the inherent power of the court to sanction misconduct by attorneys or parties before the court should be invoked only in extraordinary circumstances to remedy abuse of the judicial process." Lightman, 988 F.Supp. at 466. The Court finds no extraordinary circumstances present here that would warrant an award of attorneys' fees.  Accordingly, Plaintiffs' request will be denied.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant Plaintiffs' motion to reopen the action, for the purpose of considering Plaintiffs' motion to enforce the settlement agreement, and (2) grant the part of Plaintiffs' motion seeking to enforce the settlement agreement.  The Court will issue an appropriate order.

       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    February 15, 2012